UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**18 CV 5461**

---

FENG LIU,

                Plaintiff,

    - against -

NOMURA AMERICA SERVICES, LLC

                Defendant.

Index No.

**COMPLAINT**

---

Plaintiff Feng Liu ("Plaintiff") alleges upon knowledge to himself and upon information and belief as to all other matters as follows:

## INTRODUCTION

1. This action is brought on behalf of Plaintiff who is a resident of the State of New York and was formerly employed by Nomura America Services, LLC ("Defendant") as an employee to provide financial risk system development services to Defendant's technology department of financial service.

2. Plaintiff seeks declaratory, injunctive and monetary relief from Defendant which Plaintiff is statutorily and legally entitled to receive pursuant to a valid employment contract between Plaintiff and Defendant, and/or pursuant to Title VII of the Civil Rights Act of 1964 (as amended), Section 296.1(a) of the New York Human Rights Law, N.Y. Exec. Law § 290 et seq. and Title 8 of the New York City Administrative Code, § 8-107 prohibit retaliation against an employee who seeks to assert rights under the Human Rights Law.

## THE PARTIES

3. Plaintiff is residing in the Queens, New York.

4. Defendant Nomura America Services, LLC is located 309 W 49th St, Worldwide Plaza, New York, NY 10019-7316.

5. Plaintiff was formerly employed by Defendant as a financial risk system technology developer from May 22 2017 to December 8, 2017.

## STATEMENT OF FACTS

6. On May 22, 2017, Nomura America Services, LLC ("Defendant" or "Nomura") hired Plaintiff as a financial risk system technology developer. Prior to the beginning of the employment, Defendant and Plaintiff agreed on benefits, including but not limited to, approximately 15 paid vacation days per annum. Plaintiff began to work officially on May 22, 2017.

7. On or about June 20, 2017, Plaintiff's immediate supervisor Dennis Sinelnikov ("Sinelnikov"), inappropriately pressed his pennies on Plaintiff's right upper arm, taking advantage of talking to Plaintiff and standing by Plaintiff's seat. It made Plaintiff very uncomfortable. Plaintiff stared at the manager to express his anger. The next day, Sinelnikov intentionally got at a lower position at Plaintiff's left side, and act to smile like a girl to Plaintiff, but there is no touch at that time. Sinelnikov might want to make peace and show some apologizing gesture, but Plaintiff did not take it. So Sinelnikov became very angry afterwards and the relationship between them became worse since then.

8. During the following a few weeks, Sinelnikov has not seriously helped

Plaintiff to setup his development environment. For a new employee to the team, his/her supervisor typically has the responsibility to help the new joiner to setup company specific development environment, so that Plaintiff would be able to start his assignment under the working environment. Sinelnikov has even used tactic to trap Plaintiff in development environment setting so as to degrade complainant's performance. Further, Sinelnikov setup several conferences complaining Plaintiff's performance. Sinelnikov also insulted Plaintiff in front of many colleagues. Plaintiff had the growing sense that he was adrift and isolated under the repeated humiliation from Sinelnikov.

9. On July 20, 2017, Plaintiff sent an email about the supervisor's sexual harassment and following retaliation to Human Resource department and Compliance department of Defendant, which is attached in the Defendant's Position Statement.

10. On July 24, 2017, Human Resource department of Defendant setup conference with Plaintiff and conducted investigation. Plaintiff was informed the surveillance video would be usually retained for 90 days. Plaintiff petitioned to retain the video tape for evidence.

11. On July 31, 2017, Plaintiff suffered from further isolation and hostile working environment and then sent email reporting to Human Resource department.

12. On August 1, 2017, Human Resource department setup conference with Plaintiff, and informed Plaintiff there's no evidence of sexual harassment founded then, and they haven't finished the investigation.

13. On August 2, 2017, Plaintiff visited EEOC New York office, filled the form and had a conversation with EEOC Investigator.

14. On August 8, 2017, Human Resource department of Defendant setup conference with Plaintiff, informed that there's no evidence of sexual harassment

founded. The Human Resource Department asked some third party to review the surveillance video, and the third party informed them they did not see any evidence of sexual harassment. So Human Resource Department dismissed the case. In fear of further harassment and retaliation, Plaintiff expressed his petition for changing manager according to attorney's suggestion.

15. On August 9, 2017, Plaintiff visited New York State Division of Human Rights and filed the sexual harassment discrimination case in person.

16. On or about August 21, Conor Brennan ("Brennan"), who was the immediate supervisor of SINELNIKOV, became Plaintiff's manager. Then Plaintiff used different skill set – Python to work on the assignment, which was not Plaintiff's past major experience or the primary skill set interviewed for being hired to the company.

17. After Brennan helped Plaintiff setup new development environment, Plaintiff completed the assignment successfully and independently.

18. After Plaintiff changed report line to new manager, Sinelnikov continued making Plaintiff under pressure and cause hostile working environment against Plaintiff. Sinelnikov sat to the next row to the Plaintiff and where Plaintiff sat is by the passage through which Sinelnikov has to pass to his seat.

19. On or about September 15, 2017, in order to collect evidence and protect Plaintiff himself, Plaintiff brought a camera on his own desk.

20. On or about September 19, 2017, three securities stuff of Defendant, led by Mark D Vara, forfeited Plaintiff's camera. Plaintiff explained to them "because I suffered from sexual harassment, I brought the camera for …". After hearing this statement, security stuff immediately interrupted Plaintiff. Security Staff warned Plaintiff and told Plaintiff that they would not return the camera to Plaintiff until

Plaintiff's last day. Further, security staff said they would not return the memory card inside the camera to Plaintiff.

21. Sinelnikov was covered up by high level management. Consequently, although Plaintiff finished the assignment successfully and independently, Brennan still criticized that Plaintiff had not completed it timely. Brennan stated that "... If I worked on it, it should be finished in two hours ...". Plaintiff said that criticism was not fair and reasonable. Further, when Plaintiff spoke to Brennan in his office to report the sexual harassment incident conducted by Sinelnikov in detail, Brennan interrupted Plaintiff immediately and stated harshly that "... don't talk to me about that, I don't want to know and also don't let me know it ...".

22. On or about October 6, 2017, when Neil, who was the supervisor of Brennan, had a trip to New York office from London, Plaintiff sent a email to Neil asking for a time for conference to report the incident. Plaintiff has not got any response.

23. After finished the assignment, Plaintiff has not get any new assignment.

24. On October 20, 2017, under the process of investigation by New York State Division of Human Rights, Defendant filed a Position Statement to NYSDHR, in response to Plaintiff's complaint.

25. On November 10, 2017, Plaintiff submitted rebuttal to the Position Statement to New York State Division of Human Rights.

26. In the afternoon of November 17, 2017, Plaintiff cannot sustain long term cumulated stress, and left office for visiting emergency room at Mount Sinai West hospital for medical treatment for long term stress, anxiety and fear caused by the supervisor Dennis Sinelnikov's sexual harassment, and other impropriety treatment from development environment (including colleagues and other personnel).

27. On December 8, 2017, Plaintiff's employment was terminated by

Defendant. At the time, the investigation from NYSDHR was still ongoing. When Defendant terminated Plaintiff's employment in a conference room, the stuff from Human Resource who represented Defendant, mentioned Plaintiff had opened a case in New York State Division of Human Rights for complaint of sexual harassment from his former supervisor. Defendant further mentioned that Defendant was willing to pay $6,000 for Plaintiff's in full and final settlement and release of all claims.

28.     Defendant has established a practice to pay accrued and unused vacation to other employees who have been terminated like Plaintiff by Defendant. However, Plaintiff has not received unused vacation payment for three months since termination.

29.     On February 28, 2018, Plaintiff filed a complaint in the Federal District Court for the Southern District of New York (SDNY) for unused vacation payment.

30.     On March 14, Defendant sent unused vacation payment to Plaintiff after served summons.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Harassment, Hostile Workplace and Wrongfully termination)

31.     Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in paragraphs numbered "1" through "30" as if set forth more fully and at length herein.

32.     Section 296.1(a) of the New York Human Rights Law, N.Y. Exec. Law § 290 et seq., and Title 8 of the New York City Administrative Code, §8-107, prohibit sexual harassment in employment. Defendants were Plaintiff's employers within the meaning of those laws.

33.     Defendants denied Plaintiff the benefit of employment, including all favorable conditions and emoluments thereof and created and allowed to exist a hostile,

intolerable workplace based on sexual harassment that imposed upon him by the conduct of its employees and managers, of which they was well aware of and without any non-discriminatory basis therefor. Defendants, who were Plaintiff's employers, supervisors and managers, made unwanted sexual advances to the plaintiff or engaged in other unwanted physical conduct of a sexual nature and they conditioned job benefits, terms and/or conditions, by conduct.

34. Defendants' actions were taken under circumstances giving rise to an inference of discrimination.

35. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff suffered adverse employment consequences. Plaintiff was caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to his detriment. His workplace became intolerable and he was constructively terminated.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Retaliation)

36. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in paragraphs numbered "1" through "35" as if set forth more fully and at length herein.

37. Title VII of the Civil Rights Act of 1964, Section 296.1(a) of the New York Human Rights Law, N.Y. Exec. Law § 290 et seq. and Title 8 of the New York City Administrative Code, § 8-107 prohibit retaliation against an employee who seeks to assert rights under the Human Rights Law. Defendants were Plaintiff's employers within the meaning of those laws.

38. Plaintiff complained to Defendants about the mistreatment based on sexual harassment inflicted upon him by employee and managers of Defendants. In response, Plaintiff was subjected to additional mistreatment until his working conditions became unbearable for the purpose of punishing him for attempting to assert his rights.

39. Defendants' actions were taken under circumstances giving rise to an inference of discrimination.

40. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff suffered adverse employment consequences. Plaintiff was caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to his detriment.

PRAYER FOR RELIEF

WHEREFORE, the Named Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiffs and against the Defendant, jointly and severally, for the following relief:

a. Damages to be determined at trial for unpaid wages and benefits due, and liquidated damages under the New York Labor Law and regulations there under;

b. Statutory damages under the New York Labor Law; and

c. The costs of this action, together with reasonable attorneys' fee, and such other and further relief as this Court deems necessary and proper.

Dated: June 16, 2018
      Forest Hills, New York

                                        FENG LIU

*/s/ Feng Liu*

FENG LIU
9013 69TH Avenue,
Forest Hills, NY 11375
T: (646) 717-5863
Email: liukevin2001@gmail.com

Index No.:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Feng Liu,<br><br>                Plaintiff,<br><br>      - against -<br><br>Nomura America Services, LLC<br><br>                Defendants. | Index No.<br>**COMPLAINT** |

## **SUMMONS and COMPLAINT**

FENG LIU

By: _[signature]_

FENG LIU
9013 69th Avenue
Forest Hills, NY 11375
T: (646) 717-5863
Email: liukevin2001@gmail.com

EEOC Form 161 (11/16) **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Feng Liu<br>9013 69th Avenue<br>Forest Hills, NY 11375 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16G-2017-04163 | Holly M. Shabazz,<br>State & Local Program Manager | (212) 336-3643 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[X] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*[signature]*

Kevin J. Berry,
District Director

March 19, 2018
*(Date Mailed)*

Enclosures(s)

cc:
Attn: Nancy Prahofer, Esq.
NOMURA SECURITIES
309 West 49th Street
New York, NY 10019